UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 21-2-DLB

JUDITH BATES SKELTON                                                                 PLAINTIFF

v.                       **MEMORANDUM OPINION AND ORDER**

KILOLO KIJAKAZI,
ACTING COMMISIONER OF SOCIAL SECURITY                              DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

## I.  INTRODUCTION

This matter is before the Court on Plaintiff Judith Bates Skelton's Motion for Summary Judgment (Doc. # 15), filed pursuant to 42 U.S.C § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Social Security Administration.  Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1] has filed a Cross-Motion for Summary Judgment (Doc. # 20).  The Court, having reviewed the administrative record and the parties' motions, and for the reasons stated herein, **affirms** the Commissioner's decision.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Judith Bates Skelton is a 58-year-old resident of Danville, Kentucky.  (Tr. 78).  Ms. Skelton filed an application for disability insurance benefits with the Social Security

---

[1]     During the pendency of this lawsuit, Dr. Kilolo Kijakazi became Acting Commissioner of the Social Security Administration.  The Commissioner of the SSA was named in the original Complaint (Doc. # 1) of this lawsuit, and the Social Security Administration as an entity nonetheless remains the official defendant, but the Court has added the current Acting Commissioner's name in the case caption.

1

Administration ("SSA") on March 28, 2016. (Tr. 208). In her application, Ms. Skelton alleged disability beginning in April 2011, and continuing through the date of application, based on various physical and mental ailments, including chronic pain, major depressive disorder, and post traumatic stress disorder. (Tr. 225). In July 2016, Ms. Skelton's claim was initially denied (Tr. 115), and then it was denied on reconsideration in October 2016. (Tr. 122). Ms. Skelton requested a hearing before an Administrative Law Judge ("ALJ") in the same month (Tr. 129), and a hearing was held before ALJ Boyce Crocker in April 2018. (Tr. 34). The ALJ issued an unfavorable decision in August 2018, finding that Ms. Skelton was not disabled within the confines of the Social Security Act. (Tr. 10). Ms. Skelton then appealed to the SSA's Appeals Council, who denied her appeal in May 2019. (Tr. 1053).

Then, in July 2019, Ms. Skelton filed an appellate action in this Court, and the SSA asked the Court to remand the case for further proceedings in April 2020. (Tr. 1079). On remand, the Appeals Council acknowledged that the ALJ "did not evaluate the nature and severity of the claimant's diagnosed somatic disorder" and provided the following details:

> Notably, State agency psychologist, Ellen Shapiro, Ph.D., diagnosed the claimant's somatic disorder as a severe impairment (Exhibit 4A, pages 6-9). The Administrative Law Judge assigned great weight to Dr. Schapiro's [*sic*] opinion, but did not otherwise discuss the nature and the severity of the disorder (Decision, pages 3-4 and 13). Moreover, other evidence of record documents a pain disorder and that the claimant's profile revealed a primary elevation on the somatic scale (Exhibit 3F, pages 70-72 and 8F, page 5). Accordingly, further evaluation is required.

(Tr. 1076). The Appeals Council accordingly ordered the case for rehearing by an ALJ, and provided instructions to the second ALJ, including to "evaluate the nature and severity of the claimant's somatic/pain disorder in accordance with 20 C.F.R. 404.1591."

2

(Tr. 1077). ALJ Jerry Lovitt conducted the second hearing in October 2020 (Tr. 999) and issued a second unfavorable decision to Ms. Skelton in November 2020. (Tr. 969). The second unfavorable decision precipitated the filing of this action to review ALJ Lovitt's decision.

III.   ANALYSIS

    A.   **Standard of Review**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Hum. Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the

Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

### B. The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, the ALJ determined at Step One that Ms. Skelton had not engaged in substantial gainful activity since the alleged onset date of her disability, in addition to clarifying that Ms. Skelton met the insured status requirements of the Social Security Act. (Tr. 974). At Step Two, the ALJ found that Ms. Skelton's severe impairments were somatoform disorder, anxiety, depression, post-traumatic stress disorder, obesity, obstructive sleep apnea, partial rotator cuff tear with arthroscopy, cervical post-laminectomy syndrome, and degenerative disc disease of the cervical and lumbar spines. (*Id.*). While Ms. Skelton's application also listed impairments relating to gastroesophageal

reflux disease, hyperlipidemia, vitamin B12 deficiency, hypertension and headaches, the ALJ determined at Step Two that those impairments were not "severe" within the definitions provided by the Social Security Act and its regulations. (Tr. 975). At Step Three, the ALJ concluded that Ms. Skelton did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments within the Social Security Act, and so the analysis proceeded to the next step. (Tr. 976).

Before completing the fourth step, the ALJ found that Ms. Skelton had the residual functional capacity ("RFC") "to perform light work as defined in the DOT," with a lengthy list of limitations, including with "no more than occasional exposure to temperature extremes, vibrations, and workplace hazards," and "with frequent contact with supervisors, but only occasional contact with co-workers and the general public." (Tr. 979). The ALJ's analysis at Step Four was particularly lengthy, in accordance with the Appeals Council's instructions on remand. (*See* Tr. 979-991). More specifically, the ALJ found that Ms. Skelton's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 981). In making that finding, the ALJ pointed out medical evidence that undercut Ms. Skelton's testimony with respect to her spine (Tr. 981), shoulders and arms (Tr. 982), sleep apnea (Tr. 984), obesity (Tr. 984-85), and mental health impairments, including somatoform disorder, anxiety, depression, and post-traumatic stress disorder (Tr. 985). During his evaluation of Ms. Skelton's mental health impairments, the ALJ reviewed the record evidence with respect to many different healthcare providers and assigned weight of consideration to each. (*E.g.*, Tr. 987). At the end of Step Four, the ALJ concluded that with the determined RFC, Ms. Skelton would

5

not be able to perform any of her past relevant work, which consisted of working as a high school English teacher. (Tr. 991).

Lastly, at Step Five, the ALJ determined that a significant number of jobs existed within the national economy that Ms. Skelton could have performed within her RFC and its limitations, while considering her age, experience, and education. (Tr. 991). The ALJ wrote that a vocational expert testified that Ms. Skelton could perform the jobs of office helper, stock checker for apparel, and mail room clerk, which exist in significant numbers within the national economy. (Tr. 992). Because those jobs can be performed within the limitations of Ms. Skelton's RFC, the ALJ concluded that she was not under a disability, within the definitions of the Social Security Act, during the relevant period between April 2011 and December 2016. (Tr. 992).

On appeal to this Court, Ms. Skelton argues that the ALJ's decision is not supported by substantial evidence because he failed to appropriately weigh the opinion evidence in determining her RFC. (Doc. # 15-1 at 5). After reviewing the filings made by Ms. Skelton and by the Commissioner, the Court has decided that Ms. Skelton's argument does not warrant reversal and remand, and the Commissioner's decision is thus affirmed for the foregoing reasons.

**C.     Review**

Ms. Skelton argues that the ALJ in her case "failed to weigh the opinion evidence, including the opinions of treating therapist, Linda F. Richardson, LCSW; consultative examiner, Jennifer Fishkoff, Psy.D.; examiner Anthony Cabot, M.D.; and treating physician, Twiggy Harris, M.D., in accordance with the appropriate legal standards." (Doc. # 15-1 at 6). In response, the Commissioner has posited that the ALJ's decision

6

was supported by substantial evidence (Doc. # 20 at 7) and that he appropriately weighed the medical opinions (*id.* at 9).  The Court agrees with the Commissioner.

As previously stated, "substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 286.  The Court cannot weigh the evidence or re-litigate the case, but only examine the sufficiency of the evidence, even if the Court may have decided the case in a different manner.  *See Her*, 203 F.3d at 389-90.  If the ALJ's decision is supported by substantial evidence, the Court must affirm the decision.  *Cutlip*, 25 F.3d at 286.

With specific respect to the weighing of medical opinions, relevant Social Security regulations instruct ALJs to "consider the medical opinions in [a] case record together with all the relevant evidence[.]"  20 C.F.R. § 404.1527(b).  More weight is given to the medical opinions of healthcare providers who examine the claimant than those of providers who do not examine the claimant.  *Id.* at (c)(1).  Additionally, greater weight is given to opinions from healthcare providers with a more extensive "treatment relationship" to the claimant.  *Id.* at (c)(2).  The regulations proscribe certain factors that indicate more extensive treatment relationships, including length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, and specialization.  *Id.*  The Sixth Circuit has interpreted these rules to say that "if the ALJ gives the treating source's opinion other-than-controlling weight, the ALJ must give 'good reasons' for having done so."  *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397 (6th Cir. 2014) (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

7

To the extent that "nonmedical sources" or "non-acceptable medical sources" provide medical opinions, the ALJ is instructed to weigh those opinions using the appropriate factors for weighing medical sources, and "explain the weight" to "ensure that the discussion . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."[2]  20 C.F.R. § 404.1527(f).  In other words, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)).  However, opinions that relate directly to the administrative findings reserved to the Commissioner, such as whether a person is disabled, are "not give[n] any special significance."  20 C.F.R. § 404.1527(d).

When using the record evidence to determine a claimant's RFC, irrespective to the type of source, the ALJ is required to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence."  SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996).  If any "material inconsistencies or ambiguities" exist, the ALJ must "explain how [they] were considered and resolved."  *Id.*  Courts within the Sixth Circuit have interpreted this ruling to require that "the ALJ must always build an 'accurate and logical bridge' from the evidence to her conclusions." *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 767 (N.D. Ohio 2019); *see also Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004)).  With these rules in mind,

---

[2]  "Acceptable medical sources" and "Nonmedical sources" are defined at 20 C.F.R. § 404.1502.

8

the Court will evaluate the ALJ's decision with respect to each of the opinions raised by Ms. Skelton in turn.

### 1. Linda F. Richardson, LCSW

Ms. Richardson is a therapist who saw Ms. Skelton at Kaiser Permanente in Kennesaw, Georgia. (Tr. 676). In a letter dated January 30, 2012, Ms. Richardson wrote that Ms. Skelton was "in a serious car accident in March 2011 and experienced injuries that prevented her from being capable of working in her position as a teacher." (*Id.*). She also wrote that Ms. Skelton had "made minimum progress in therapy and ha[d] a long way to go," as Ms. Skelton continued to suffer from psychological symptoms that should be taken "in consideration when making any decision regarding her los[t] wages payment." (Tr. 677).

The ALJ afforded Ms. Richardson's opinions "little weight . . . as it is not a medical opinion and Ms. Richardson is not an acceptable medical source under agency regulations." (Tr. 987). According to Ms. Skelton, the ALJ's weighing here was incorrect, as Ms. Richardson is a treating source and thus her opinion should have been entitled to more weight. (Doc. # 15-1 at 7). Ms. Skelton additionally posits that because Ms. Richardson's conclusions are supported by records, it "seems analogous to a medical opinion that the ALJ should have considered." (*Id.* at 8).

Unfortunately for Ms. Skelton, the ALJ's weighing of Ms. Richardson's opinions are supported by substantial evidence. Because she is a Licensed Clinical Social Worker ("LCSW"), Ms. Richardson's opinions are not considered to be from an "acceptable medical source" within the definitions of the Social Security Act. *See* SSR 06-03p, 2006 WL 2263437, at *45594 (Aug. 9, 2006) (referring to social workers as a non-acceptable

9

medical source). As such, the ALJ is only required to "explain the weight" provided. 20 C.F.R. § 404.1527(f). The ALJ explained that Ms. Richardson "did not express any specific limitations that affected the claimant's ability to work," (Tr. 987), and otherwise reasoned thoroughly why other opinions were given more weight than Ms. Richardson's. (Tr. 986-89). Otherwise, to the extent that Ms. Richardson asserted her opinion that Ms. Skelton was disabled, the ALJ is instructed to afford no "special significance" to that type of assertion, and he accordingly dismissed it. 20 C.F.R. § 404.1527(d); (Tr. 987).

Accordingly, because "an ALJ has discretion to determine the proper weight to accord opinions from" sources such as an LCSW, the Court finds that the ALJ properly weighed her opinion.

### 2. Jennifer Fishkoff, Psy.D.

Dr. Fishkoff is a licensed psychologist employed by the Commonwealth of Kentucky, who evaluated Ms. Skelton in June 2016. (Tr. 647). After examining Ms. Skelton, Dr. Fishkoff reported that Ms. Skelton's "impairments are long-term and chronic," that her ability to "maintain employment is poor," and that her "ability to sustain attention and to perform simple and repetitive tasks as would be required over an 8-hour workday is impaired." (Tr. 652).

The ALJ summarized Dr. Fishkoff's findings (Tr. 986-87), and gave "limited weight" to her opinions because the "overall objective medical evidence did not properly support the magnitude of limitations as indicated by Dr. Fishkoff." (Tr. 988). Ms. Skelton contends that the ALJ incorrectly weighed Dr. Fishkoff's opinions, as she is a treating source, and that the ALJ did not provide adequate reasoning to support his conclusion. (Doc. # 15-1

10

at 8-9). After reviewing the ALJ's decision, the Court finds that his conclusion regarding Dr. Fishkoff is supported by substantial evidence.

While the regulations provide for greater weight to "treating sources," they also provide that certain factors are to be considered when assigning weight, and if an ALJ "gives the treating source's opinion other-than-controlling weight," the ALJ should use those factors to provide "good reasons for having done so." *Engebrecht*, 572 F. App'x at 397; 20 C.F.R. § 404.1527(c). Among those factors are "supportability" and "consistency," which refer to "relevant evidence to support a medical opinion," and "consisten[cy] . . . with the record as a whole." *Id.* at (3)-(4).

Here, the ALJ pointed out that Dr. Fishkoff's opinions regarding Ms. Skelton's abilities were inconsistent with the (otherwise voluminous) record, and unsupported by her own observations. More specifically, the ALJ reasoned that while Dr. Fishkoff noted that Ms. Skelton "did not appear capable of tolerating the stress and pressures associated with day to day work activity," her own "treatment history [did] not support [those] opinions, as there is no evidence of advanced mental health symptoms[.]" (Tr. 988). The ALJ also pointed to therapy notes and Dr. Fishkoff's own observations that Ms. Skelton was capable of "engaging in activities . . on nearly a daily basis." (Tr. 989). In short, the ALJ provided "good reasons" for discounting Dr. Fishkoff's opinion, and so the weight assigned was in line with federal regulations and Sixth Circuit case law. To the extent that Ms. Skelton points out contradictory evidence within the record, the Court notes that it is not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Cutlip*, 25 F.3d at 286. Thus, the ALJ's weighing of Dr. Fishkoff's opinion is supported by substantial evidence.

### 3. *Anthony Cabot, M.D. and Twiggy Harris, M.D.*

Dr. Cabot and Dr. Harris are physicians who evaluated Ms. Skelton in April 2012, and June 2013, respectively. Dr. Cabot is an orthopedic surgeon in Smyrna, Georgia (Tr. 687), and Dr. Harris is an internist at Townpark Internal Medicine in Georgia (Tr. 678). Dr. Harris wrote that Ms. Skelton "is considered totally disabled" to work as a teacher (*id.*), and Dr. Cabot wrote that Ms. Skelton "is definitely compromised in vocational and recreational activities," and that she "would be limited to 10 pounds of lifting and frequent rest breaks" when working. (Tr. 687). The ALJ gave little weight to the opinions of both doctors. (Tr. 987-988). Ms. Skelton argues that the assigning of weight was improper, as she attests that the ALJ "picked and chose" evidence while evaluating her somatic disorder, as the ALJ only considered objective evidence and not psychological evidence.

Ms. Skelton's arguments with respect to Dr. Cabot and Dr. Harris fail for the same reason as her argument with respect to Dr. Fishkoff. Even though Dr. Cabot and Dr. Harris are "treating sources," the ALJ only needs to provide "good reasons" within the regulations to assign less-than-controlling weight. *Engebrecht*, 572 F. App'x at 397; 20 C.F.R. § 404.1527(c). Here, the ALJ noted extensively that Dr. Cabot's opinions were not otherwise supported by other evidence, including the notes of Dr. Yilling and Dr. Hamann. (Tr. 987). The ALJ also cited ample evidence when discounting Dr. Harris' opinions, including Dr. Yilling's notes, and the ALJ also noted that Dr. Harris sought to opine on Ms. Skelton's disability status, which is to be afforded "no significant weight" under governing regulations. (Tr. 988); 20 C.F.R. § 404. 1527(d). All in all, the ALJ provided "good reasons" for discounting Dr. Cabot's and Dr. Harris' opinions, and so his weighing is supported by substantial evidence.

## IV.   CONCLUSION

Otherwise, to the extent that Ms. Skelton points out inconsistencies within the evidence beyond how the ALJ weighed medical opinions, the Court again notes that it cannot re-litigate the case, and it cannot resolve conflicts in the evidence. *Cutlip*, 25 F.3d at 286. Even if evidence exists that supports Plaintiff's side, the Commissioner's conclusions must be affirmed if they are supported by substantial evidence. *Listenbee*, 846 F.2d at 349. Here, the ALJ provided a lengthy explanation as to his reasoning on each conclusion made. (*See* Tr. 979-991). The ALJ complied with the Appeals Court's remand order (Tr. 1076-77), and he sufficiently built an "accurate and logical bridge" from the evidence to his conclusions. *Ripley*, 415 F. Supp. 3d at 767. Thus, his conclusions are supported by substantial evidence and must be affirmed.

Accordingly, **IT IS ORDERED** that:

(1)   Ms. Skelton's Motion for Summary Judgment (Doc. # 15) is **DENIED**;

(2)   The Commissioner's Motion for Summary Judgment (Doc. # 20) is **GRANTED**;

(3)   This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and;

(4)   A separate Judgment shall be entered herewith.

This 1st day of August, 2022.



Signed By:
David L. Bunning   DB
United States District Judge